| | | | |
|---|---|---|---|
| **NEW YORK STATE** Corrections and Community Supervision<br>**DIRECTIVE** | TITLE<br>**Community Supervision Revocation Process** | NO.<br>9050 | |
| | | DATE<br>08/06/2018 | |
| SUPERSEDES<br>DOP P&P Manual Item #9212.00 | DISTRIBUTION<br>A B | PAGES<br>PAGE 1 OF 19 | DATE LAST REVISED |
| REFERENCES (Include but are not limited to)<br>See Section III | APPROVING AUTHORITY | | |

**I. PURPOSE:** The purpose of the revocation process is the protection of the community through the reincarceration of parolees who, through their actions, have demonstrated an unwillingness or an inability to abide by the conditions of their parole, conditional release, presumptive release, or period of post-release supervision. The decision to reincarcerate someone shall never be made without sufficient cause and evidence to support violation charges involving new criminal behavior, absconding from supervision, and technical (rule) violations. The process shall be initiated at the point where the Parole Officer first learns of the violative behavior, allegations, or arrest for new criminal behavior, and continues through the investigative process, case conferences, preparation of the violation reports, and the hearing process.

**II. POLICY:** It is the policy of the Department of Corrections and Community Supervision (DOCCS) to ensure that an investigation is conducted into all allegations of a violation of release. The purpose of the investigation is to determine if a parolee has violated the conditions of parole, conditional release, presumptive release, or post-release supervision in an important respect and whether such violation can be established at the revocation hearings. DOCCS policy emphasizes the importance of conducting a thorough investigation and assessment of the noncompliant behavior and rule violations by a parolee. The decision to pursue a revocation requires consideration of the parolee's history under community supervision as well as the availability and suitability of alternatives to reincarceration and diversion opportunities. The Department's (DOCCS) policy stresses the importance of the chain of command decision making process involving warrant issuance, interventions, the use of graduated responses, and revocation.

**III. REFERENCES**

- Constitution
- 9NYCRR
- Executive Law
- Penal Law
- Criminal Procedure Law
- Chapter 904 Laws of 1977
- General Construction Law
- NY County Law
- Interstate Compact
- ACA Expected Practices
    - 4-APPFS-2B-02
    - 4-APPFS-2B-03
    - 4-APPFS-2B-04
    - 4-APPFS-2B-05
    - 4-APPFS-2B-08
    - 4-APPFS-2B-11
    - 4-APPFS-2B-07
    - 4-APPFS-2B-10
- Mental Hygiene Law
- NYS Board of Appeals in People ex rel. Calloway v. Skinner
- Directive #9051, "Community Supervision – Violation of Release Report – Bureau Analysis – Notice of Violation"
- Directive #9213, "Re-Release of Community Supervision Violators in Local Custody (County Correctional Facilities)"

IV. **VIOLATION WARRANT ISSUANCE (CASE CONFERENCE REQUIREMENT):** Prior to the issuance of a technical parole or post-release supervision violation warrant, a case conference is to be conducted by the Bureau Chief (Area Supervisor) and the Senior Parole Officer. It is acknowledged that there are many situations that demand an immediate response by staff and it is therefore impossible to engage the Bureau Chief prior to warrant issuance and enforcement. Senior Parole Officers must continue to respond to emergency situations, and any situation that involves an immediate threat to Officer safety or the safety of the public. The discretionary authority of the Senior Parole Officer is vitally important to the day-to-day operations of the Department.

The Bureau Chief and Senior Parole Officer case conference requirement is intended to address the many situations where it is appropriate to consider alternatives to incarceration. The case conference ensures that all alternatives and graduated responses are considered prior to warrant issuance. The case conference also accounts for any assistance or resources provided by Re-Entry Services staff.

The technical violation case conference must address and reflect all efforts made with respect to alternatives considered prior to warrant issuance, an assessment of the severity of the violation, and a determination of community safety risk. The case conference between the Bureau Chief and the Senior Parole Officer provides an opportunity to emphasize the importance of considering alternative responses to the presenting behavior, ensures quality control with regard to our re-entry efforts and adherence to policy, as well as consistency in responses to technical rule violations. The Senior Parole Officer and Parole Officer must provide the Bureau Chief with the facts of the suspected violation, background, and information regarding earlier interventions prior to a recommendation to issue a warrant. The case conference requirement reinforces the Department's re-entry strategy and ensures that the Bureau Chiefs are fully involved in the pre-warrant phase and warrant issuance decision on technical rule violations. The required case conference between the Bureau Chief and the Senior Parole Officer will further the Department's supervision strategy by providing an appropriate and proportionate response to parolee behavior while taking into account risk, the nature of the technical violation, and accountability on the part of the parolee.

V. **DEFINITIONS AND PROCESS REQUIREMENTS**

   A. <u>Absconded</u>: When the parolee's whereabouts is unknown by the Department (DOCCS) and a warrant has been issued by DOCCS for the parolee's arrest.

   B. <u>Case Management System (CMS)</u>: The DOCCS data management system that stores pertinent inmate and parolee information.

   C. <u>Certificate of Release to Community Supervision</u>: A document that establishes the general conditions of release, reporting instructions, special limitations and/or restrictions, and special conditions of release imposed by the Board of Parole, a Community Supervision supervisor, and a Parole Officer.

   D. <u>Declaration of Delinquency</u>: Once probable cause is established, a member of the Board of Parole or one of the Department's Bureau Chiefs (Area Supervisors) declares the alleged violator delinquent and directs that a Final Parole Revocation Hearing be held [Executive Law §259-i(3)(d)]. By declaring an alleged violator to be delinquent, the Board member or the Bureau Chief interrupts the sentence as of the date of the delinquency (i.e., the date of the violative behavior) [Penal Law §70.40(3)(a) and (b)].

E.  Final Revocation Hearing: The alleged violator must be provided with a Final Revocation Hearing within 90 days from the date when probable cause was established [Executive Law §259-i(3)(f)(i)]. The Final Revocation Hearing is presided over by an Administrative Law Judge (ALJ) under the authority of the Board of Parole [Executive Law §259-d].

At the Final Hearing, the alleged violator has the right: 1) to compel witnesses to appear at the hearing and provide testimony; 2) to subpoena and submit documentary evidence; 3) of confrontation and cross examination; 4) to submit mitigating evidence for the purpose of being restored to supervision; and, 5) to representation of counsel [Executive Law §259-i(3)(f)(iv) and (v)]. If the alleged violator is indigent and cannot afford counsel, an attorney will be assigned under N.Y. County Law Article 18-B.

F.  Notice of Violation: Within three days of executing the parole violation warrant, or five days if executed out of state, the alleged violator must be served with written notice of the time, place and purpose of the hearing to be held on the alleged violations. [Executive Law §259-i(3)(c)(iii)]

G.  Parole Board Authority to Revoke Release: Regardless of the manner by which an inmate has gained release from a State (DOCCS) correctional facility to the community prior to the maximum expiration date of his or her sentence, the Board of Parole has been vested with "the power to revoke the presumptive release, parole, conditional release or post-release supervision status of any person." [Executive Law §259-c(6); Executive Law §259-i(3); and, Penal Law §70.40(3)]

H.  Parole Revocation Guidelines: The regulations governing the Board's revocation process establishes a set of guidelines to be used in structuring the sanction to be imposed when a violation of release is sustained. The guideline structure considers criminal history, crime of conviction, and current violative behavior. The guidelines ensure that those violators with a history of violent behavior receive the most severe penalties and those with substance abuse problems receive the necessary treatment.

I.  Parolee and Releasee: References to parolee and releasee in this directive are intended to refer to individuals released to Community Supervision and presently under the jurisdiction of DOCCS. References to parolee and releasee, for purposes of this Directive, shall also include any individuals subject to Article 10 of the New York State Mental Hygiene Law who are presently under the jurisdiction of DOCCS and serving a determinate sentence, indeterminate sentence, or a period of post-release supervision. References to parolee or releasee shall also include persons transferred to New York State from other states for supervision under the Interstate Compact.

J.  Preponderance of the Evidence (Final Revocation Hearing): If the ALJ determines upon a preponderance of the evidence that the Department has not sustained one or more of the charged violations, the charges will be dismissed, the delinquency will be cancelled, and the parolee will be immediately restored to Community Supervision [Executive Law §259-i(3)(f)(ix)]. However, if the ALJ sustains one or more of the charged violations, the ALJ shall direct that the person's release status be revoked and the adjudicated violator may be: (a) re-incarcerated; (b) restored to supervision; or (c) placed into a parole transitional facility [Executive Law §259-i(3)(f)(viii) and (x)].

K.  Probable Cause and the Preliminary Parole Revocation Hearing:  Within 15 days of the warrant's execution, the alleged violator must be afforded a Preliminary Parole Revocation Hearing [Executive Law §259-i(3)(c)(iv)].  The Preliminary Parole Revocation Hearing is presided over by a Preliminary Hearing Officer (PHO) under the authority of the Board of Parole.  The purpose of the Preliminary Hearing is to determine whether there is probable cause to believe that the parolee has violated one or more conditions governing his or her release in an important respect [Executive Law §259-i(3)(c)(iv)].  While the alleged violator is afforded due process at this stage of the proceeding (i.e., the right to introduce documents, the opportunity to be heard, the right to produce witnesses and the right of confrontation), there is no statutory right to counsel at a Preliminary Hearing.

If probable cause is found after the conclusion of the Preliminary Hearing, the alleged violator is to be advised of this determination in writing.  The decision must include both the reasons for the determination and a statement of the evidence upon which the Hearing Officer relied [Executive Law §259-i(3)(vi) and (viii)].

The alleged violator has the right to waive the Preliminary Hearing.  A waiver establishes probable cause by operation of law [Executive Law §259-i(3)(d)].  Proof of a conviction committed while under Community Supervision constitutes probable cause by operation of law, eliminating the need for a Preliminary Hearing [Executive Law §259-i(3)(c)(iv) and 259-i(d)].

L.  Probable Cause Hearing in the Receiving State (ICAOS Rule 5.108):  A parolee (offender) subject to retaking that may result in a revocation shall be afforded the opportunity for a Probable Cause Hearing before a neutral and detached Hearing Officer in or reasonably near the place where the alleged violation occurred.

M.  Re-Release of Adjudicated Violators:  Violators serving determinate sentences only must be re-released to Community Supervision after serving the time assessment imposed by the ALJ at the conclusion of the Final Revocation Hearing.  Violators serving indeterminate sentences only must be re-released to Community Supervision after serving the time assessment imposed by the ALJ at the conclusion of the Final Revocation Hearing, unless he or she has been found to have engaged in a "serious disciplinary infraction" while serving their time assessment.  This same rule is applied to those adjudicated violators who are serving "mixed sentences" (i.e., a combination of determinate and indeterminate sentences).  An adjudicated violator serving an indeterminate or mixed sentence who has been found to have engaged in a "serious disciplinary infraction" while serving a revocation time assessment, may only be re-released to Community Supervision if the Board of Parole determines that their re-release is appropriate in accordance with Executive Law §259-i(2). [Executive Law §259-i(3)(f)(x)]

- N. <u>Revocation of Community Supervision</u>: Persons paroled, conditionally released, presumptively released, or released to post-release supervision are under the legal custody of the Department (DOCCS) until the expiration of the maximum period of the sentence or period of supervision [Executive Law Section 259-i(2)(b)]. Regardless of the manner by which an inmate has gained release from a State correctional facility to the community prior to the maximum expiration date of his or her sentence, the Board of Parole has been vested with "the power to revoke the presumptive release, parole, conditional release or post-release supervision status of any person" [Executive Law §259-c(6); Executive Law §259-i(3); and, Penal Law §70.40(3)].

- O. <u>Violation Warrant (Warrant for Retaking and Detaining)</u>: When a Parole Officer believes that a person who is under their supervision has lapsed into criminal activity or has violated one or more of the conditions governing their release "in an important respect," a Parole Violation Warrant may be issued so that the parolee can be taken into custody [Executive Law §259-i(3)(a)(i)].

    Once issued by a Parole Board member or "designated Officer" within the Department (DOCCS), a parole violation warrant can be executed by any Parole Officer, Peace Officer, Police Officer, or Officer authorized to serve criminal process [Executive Law §259-i(3)(a)(iii)].

    A designated Officer shall mean a Senior Parole Officer, Bureau Chief, Assistant Regional Director, Regional Director, Deputy Director of Operations, the Director of Operations, Chief of the Parole Violation Unit, Deputy Chief of the Parole Violation Unit, and any Officer who has been provided with specific authorization by the Board of Parole. No Officer shall issue a warrant in a case where he or she is the one who furnished the report upon which it is based.

## VI. COMMUNITY SUPERVISION PROCEDURAL TERMS AND REFERENCES

- A. <u>Absconding from Supervision</u>: When a parolee makes him or herself unavailable for supervision by failing to comply with mandated office reports and changes residence without notification to the Parole Officer.

- B. <u>Parole Violation</u>: Behavior that is contrary to one or more of the conditions of release in an important respect. The behavior rises to a level that could endanger the community or the parolee and makes the parolee unamenable to supervision.

- C. <u>Evidence</u>: All means by which any alleged matter of fact could prove or disprove a parole violation.

- D. <u>Five-Hour Alert</u>: A supra notice on an arrest notice that the arrest was for one of several violent offenses which, if the parolee has been previously convicted of one of these violent offenses, a warrant issuance decision must be made within five hours of notice.

- E. <u>Cooperative Supervision (COOP) Case</u>: A parolee or releasee from another state or territory transferred to New York State under the provisions of the Interstate Compact.

- F. "[Violation of Release Report - (VORR)](#)," Form #CS4003: An accusatory instrument consisting of identifying information and a list of charges (See Directive #9051, "Community Supervision - Violations of Release Report, Bureau Analysis, Notice of Violation").

- G. "Supplementary Violation of Release Report - (SVORR)," Form #CS4003: A listing of charges and/or additional information developed or made available subsequent to the preparation of the original violation report (See Directive #9051, "Community Supervision - Violations of Release Report, Bureau Analysis, Notice of Violation").
- H. Violation of Release Package (VORR/VOP): Document package that includes the following:
    1. "Violation of Release Report," Form #CS4003;
    2. Case Summary;
    3. Criminal History;
    4. Certificate of Release to Parole Supervision and Post-Release Supervision;
    5. Supplementary Conditions of Release to Parole Supervision;
    6. "Notice of Violation," Form #CS9011;
    7. "Area/Bureau Analysis," Form #CS4003.2;
    8. "Preliminary Hearing Decision," Form #9013CS; and
    9. Adjournment history and other applicable documents, as required.
- I. Void Warrant: To nullify a warrant before it is enforced.
- J. Vacate Warrant: To withdraw as invalid a warrant after it has been enforced BUT prior to a Preliminary Hearing and where no delinquency has been declared.
- K. Parole Revocation Specialist (PRS): A Peace Officer employed by DOCCS responsible for the prosecution of revocation cases via the administrative hearing process.
- L. Declared Delinquent Other Institution (DDOI): Locally incarcerated parole violators, during the post–revocation hearing phase, awaiting transfer to DOCCS custody for return on the imposed revocation time assessment, or awaiting program placement as a Restoration to Supervision case.

## VII. PROCEDURE

- A. Investigation of Possible Violations of Release
    1. Community Supervision staff shall investigate all allegations of a possible violation of release to determine if a parolee behaved in a manner contrary to the conditions of release in an important respect, and whether such behavior can be established at the parole violation hearings.
    2. Community Supervision staff will gather evidence as follows:
        a. As appropriate to the possible parole violation; question the parolee, conduct a search of the parolee's person and/or residence, and conduct surveillance.
        b. Interview witnesses, family members, the arresting Officer, complainants, and other persons.
        c. Gather physical evidence including, but not limited to, records, documents, exhibits and/or objects.
    3. Community Supervision staff will conduct a case conference with a supervisor to determine if there has been a violation of release in an important respect and decide what action will be taken.

    4.    The supervisor (Senior Parole Officer or Bureau Chief) will, in the case of criminal behavior, ensure that the necessary investigation, follow-up and the "Violation of Release Report," Form #CS4003, are completed within 30 calendar days from the date of the arrest notification.

    NOTE: In certain instances, the arrest notification establishes the "Five-Hour Alert" process and Community Supervision staff must take action within the five-hour time frame.

B.    <u>Action Taken Following Investigation</u>

    1.    Upon completion of the investigation, after considering all possible alternatives to incarceration, the Community Supervision supervisor will take one of the following actions:

        a.    Not issue a warrant; or

        b.    Issue a warrant after the "Violation of Release Report," Form #CS4003, has been completed and submitted for appropriate action.

NOTE: The supervisor does not have to consider alternatives to incarceration in cases where the parolee is arrested for a crime defined in Penal Law Article 120, 125 or 130 having been previously convicted of MURDER, RAPE 1, SODOMY 1, AGGRAVATED SEXUAL ABUSE 1 or 2, or an ATTEMPT to commit any of the enumerated offenses.

NOTE: See Attachment A, "Violation Warrants."

C.    <u>If No Warrant Issued</u>

    1.    In all cases, except for an arrest of less than misdemeanor charges, including cases where the record has been sealed or charges dismissed, the Parole Officer will prepare and the supervisors will submit to the Bureau Chief and Board of Parole a "Violation of Release Report," Form #CS4003, requesting:

        a.    "No Delinquency No Warrant Issued" - If the Board approves the non-issuance of a warrant where there has been a new arrest, the Parole Officer and the supervisors will follow up on the status of the charges and will advise the Board of any changes in status through submission of a "Supplementary Violation of Release Report," Form #CS4003.

        b.    "No Delinquency Pending Court Action" - If the Department does not have sufficient evidence or the witness is not available to proceed with a revocation at the time of the investigation, this will allow Community Supervision to preserve the charges for later action.

    2.    If the new charges result in a conviction other than a felony, a warrant may or may not be issued depending on the seriousness of the behavior. In either case, a SVORR is to be prepared and submitted for review and consideration within 30 days of the conviction.

    3.    If the charges are dismissed and/or the record is sealed, the Parole Officer and the supervisors will prepare and submit a SVORR reporting on this development within 30 days of the dismissal.

    4.    If a no warrant recommendation has been submitted, but the Parole Board orders the commencement of the violation process, Community Supervision will issue and execute a warrant.

5. If a no warrant recommendation has been submitted pending disposition of new criminal charges and those charges result in a conviction, Community Supervision may issue a warrant.

NOTE: A person may be arrested for offenses of less than misdemeanor status. In such instances where, following an investigation, a determination is made that no warrant will be issued, a memorandum is to be submitted directly to the ALERTS Unit from the Bureau Chief with a copy to the case folder, providing information on the arrest, the date, place, description of behavior, and any other relevant information. The memorandum will include a statement that no delinquency action is planned as a result of that arrest.

D. <u>If Violation Warrant Issued</u>

1. Community Supervision staff will prepare and the supervisor will complete the Notice of Arrest/Warrant Issuance procedure and staff will enter the warrant information into the Department's Violators Entry System (VES).

   NOTE: Staff cannot enter detention warrants issued for Cooperative Supervision (COOP) cases into VES, but will instead maintain a control log for such cases. Detention warrants on COOP cases must be replaced by the sending state's warrant within 90 days or be vacated. Preliminary Hearings must be conducted for all COOP cases and the parolee may not make waiver of the right to such a hearing unless accompanied by an admission(s), in writing, to one or more significant violation(s) of the terms and conditions of supervision.

2. In absconder cases, the supervisors will prepare and submit to the Area Supervisor/Bureau Chief an "Area/Bureau Analysis," Form #CS4003.2, to accompany the VORR/VOP package to request a Declaration of Delinquency. The supervisor MUST ensure that the alleged violator is posted as wanted in the Division of Criminal Justice Services (DCJS), National Crime Information Center (NCIC) Systems, and the New York City Wanted System.

3. In custody cases, the Parole Officer will prepare a "Notice of Violation," Form #CS9011, listing the date, time and place of both the Preliminary and Final Revocation Hearings, and where the alleged violator can make a request for an attorney.

4. In out of state custody cases, the Parole Officer will contact the other jurisdiction and will follow-up by sending a letter with accompanying documents (See Attachment B).

5. Upon issuance of a warrant, Community Supervision staff will submit the VORR/VOP package to the Bureau Chief for a Declaration of Delinquency or recommendation for Parole Board Action. Community Supervision staff will forward the VORR/VOP package to the appropriate Parole Violation Unit (PVU) Bureau.

6. PVU staff will process all signed Declarations of Delinquency and forward the VORR/VOP packages requiring action to the Parole Board.

E. Lifting of Warrants Prior to a Final Revocation Determination

1. The supervisor who issued a warrant or another supervisor may void a warrant provided the violation warrant has not been enforced and no delinquency action has been declared. The supervisor will provide the reasons the warrant was voided in a memorandum to the Bureau Chief, with copies to the case folder/record and the Community Supervision Central Office Files Unit, and will prepare and complete the Notice of Arrest/Warrant Issuance procedure.

2. After enforcement of a warrant, but prior to the Preliminary Hearing or waiver of such hearing, a Board Member may vacate a warrant upon request of a supervisor accompanied by a "Supplementary Violation of Release Report (SVORR)," Form #CS4003, and the "Area/Bureau Analysis," Form #CS4003.2.

NOTE: The voiding or vacating of a warrant does not preclude the use of the same charges/allegations through issuance of a new warrant.

3. If probable cause is not found at the Preliminary Hearing, the Parole Officer will be directed to immediately lift the warrant.

4. Prior to the commencement of a Final Revocation Hearing, the Parole Revocation Specialist (PRS) may submit a "Supplementary PRS Recommendation," Form #CS4003.2B, to the Administrative Law Judge (ALJ).

5. The PRS will present recommendations and arguments to the ALJ on the record.

6. If the ALJ agrees with the recommendations of the PRS, the ALJ will complete and sign Form #CS4003.2B, "Supplementary PRS Recommendation," and authorize the lifting of the warrant.

7. If the ALJ does not agree with the PRS recommendation, the revocation process will continue.

F. The Revocation Hearing Process; Preliminary and Final Hearings

1. Service of Documents: Community Supervision will serve the parolee with the "Notice of Violation Form," Form #CS9011, and the VORR within three days of the lodging of the warrant (within five days of availability for parole violators being held out of state). (See Attachment C, "Calculation of Time Limits,")

NOTE: If the third day falls on a weekend or a holiday, papers may be served on the next business day.

NOTE: The parolee (alleged violator) is not entitled to a Preliminary Hearing if the parolee has been convicted of a misdemeanor or felony related to the pending parole violation charges.

2. The parolee may make a knowing, willing and intelligent waiver of the right to a Preliminary Hearing.

3. If the parolee refuses to sign the "Notice of Violation," Form #CS9011, Community Supervision must schedule a Preliminary Hearing.

4. If the parolee elects to have a Preliminary Hearing, Community Supervision will schedule a Preliminary Hearing to be held within 15 calendar days of the lodging of the warrant. Staff will provide at least three days notice, regardless of weekends or holidays, to the parolee of the time, date and place of the first scheduled Preliminary Hearing.

  NOTE: If the 15th day falls on a weekend or holiday, the hearing may be held on the next business day.

  5. The Parole Officer will inform alleged violators of their responsibility to advise Community Supervision of all witnesses they wish to attend the hearing.

  6. Where a Preliminary Hearing has been scheduled, but a misdemeanor conviction occurs prior to the hearing which relates to the pending parole violation charges, Community Supervision will cancel the hearing, advise all parties, prepare an "Area/Bureau Analysis," Form #CS4003.2, and submit it, along with the VOP and a certified copy of the Certificate of Conviction to PVU.

  NOTE: With limited exceptions, there is no right to counsel at Preliminary Hearings.

  NOTE: If the Parole Officer and supervisors plan to withdraw all charges, the Parole Officer will submit a SVORR to the Board, prior to commencement of the Preliminary Hearing, with a recommendation of "No Delinquency Warrant Issued Restore to Supervision" or "No Delinquency Pending Court Action," whichever is more appropriate.

G. Preliminary Hearing

  1. Fact-Finding Phase

    a. The Preliminary Hearing Officer will conduct the Preliminary Hearing, administer oaths, and will direct the presentation of evidence concerning the alleged violation.

    b. The Parole Officer is responsible for the presentation of the evidence to establish probable cause on one or more charges. The Officer will, as appropriate, subpoena witnesses and make arrangements for their admission to the facility. The Parole Officer may request an adjournment for additional proof provided such adjournment will permit the Preliminary Hearing to occur within 15 days following enforcement of the warrant. The Parole Officer must conference any proposed adjournment request with the supervisor prior to contacting the PVU.

    c. The parolee may present evidence and witnesses to refute or to mitigate the charges.

  NOTE: In COOP cases, the Parole Officer MUST proceed on ALL the listed violation charges.

  2. Dispositional Phase

    a. If probable cause is found, the Preliminary Hearing Officer will complete the "Preliminary Hearing Decision Notice," Form #9013CS, and distribute copies as appropriate. The Preliminary Hearing Officer will issue a verbal decision or recommendation immediately after the hearing and will provide written notice of the decision to the alleged violator within 21 days.

    b. Within four business days of the finding of probable cause or waiver of hearing, Community Supervision will submit the VORR/VOP package to the Area Supervisor/Bureau Chief for action.

- c. If no probable cause is found at the Preliminary Hearing, the Hearing Officer will immediately complete "Preliminary Hearing Decision Notice," Form #9013CS, and authorize restoration.  The Parole Officer will immediately lift the warrant.  Community Supervision will distribute Form #9013CS as required.

  NOTE:  If information not covered in the original VORR is developed during the course of, or subsequent to, the Preliminary Hearing which could form the basis of additional charges, the Parole Officer will prepare a SVORR.  If no probable cause was found at the Preliminary Hearing, such information and new charges may be used as the basis for the issuance of a new warrant.

H. <u>Adjournment of Preliminary Hearing Upon Request of Parolee/Counsel</u>

  1. Prior to the Preliminary Hearing, the appropriate PVU may grant an adjournment for good cause.  Such a request must be in writing.  The PVU will advise the Parole Officer of the adjourned date and the Officer will notify the Department 's witnesses.

  2. At the Preliminary Hearing, the Hearing Officer may grant an alleged violator an adjournment for good cause or for counsel, if a determination is made that counsel is necessary.  The Hearing Officer will complete a "Preliminary Hearing Decision Notice," Form #9013CS, and distribute copies as appropriate.  Community Supervision will immediately notify the PVU of the adjourned date.

  NOTE:  Any adjournment at the request of the alleged violator or counsel extends the 15-day period in which a Preliminary Hearing must be held.

I. <u>Final Hearings</u>

  1. The Fact-Finding Phase

     a. The Administrative Law Judge (ALJ) or a member of the Parole Board will conduct the hearing, will administer oaths, may entertain applications for an adjournment, will direct the presentation of evidence, and will make a determination as to which charges have been sustained by a preponderance of the evidence.

     b. The Parole Revocation Specialist (PRS) or Parole Officer will present evidence and examine witnesses to prove the charges in the VORR/VOP package.

     c. The parolee may present evidence and witnesses to refute or to mitigate the charges.

     d. If no charges are sustained by a preponderance of the evidence, the presiding Officer will dismiss the charges and order the warrant to be lifted immediately by submitting the appropriate documentation.

     e. If one or more charges are sustained, a Delinquency Date (DD) will be established based on the earliest sustained date of violative behavior.

  2. The Dispositional Phase

     a. Both the parolee (alleged violator) and the Department's representative will make their recommendations to the presiding Officer (ALJ) for resolution of the revocation proceeding.

    b. The Board of Parole may refer parole violators to the Willard Drug Treatment Campus (WDTC), Parole Diversion Program (PDP), Transitional Facility Program (TFP), or other regionally available treatment programs as deemed appropriate.

    c. The presiding Officer (ALJ) will consider the recommendations and will make a final determination in accordance with Parole Revocation Guidelines.

    d. The presiding Officer (ALJ) may reserve decision for further review and/or consideration.

NOTE:  There is an absolute right to counsel at Final Revocation Hearings.  Counsel must file a written Notice of Appearance with the appropriate Parole Violation Unit.  The Attorney of Record shall be given written notice of the date, time, and place at least 14 days prior to the first scheduled hearing unless the right to notice is waived.

J. <u>Adjournments of Final Hearing</u>

1. Prior to the Final Hearing, the appropriate PVU may grant an adjournment for good cause.  Such request must be in writing.  PVU will advise the PRS, the parolee, and the attorney of record of the adjournment date.

    NOTE:  If an adjournment is requested by the Department prior to the first scheduled hearing, the parolee and attorney of record must have 14 days notice of the adjourned date, time and place unless the right to notice is waived.

    NOTE:  The Department has 90 days from the date of waiver of Preliminary Hearing or finding of Probable Cause to complete the Final Hearing process. Any adjournment at the request of the alleged violator/attorney of record extends the 90-day period in which a Final Hearing must be held.  (See Attachment E, "Diamond Decision,")

2. At the Final Revocation Hearing, the presiding Officer may grant an adjournment for good cause.  The presiding Officer will advise all present of the adjourned date. PVU staff will send further adjournment notifications as necessary.  If a decision is made to adjourn, the PRS should request that testimony from the witness or witnesses present be entered into the record.

3. In exceptional circumstances during a Final Hearing, the presiding Officer may continue the proceeding to a subsequent date.

    NOTE:  If an adjournment is granted subsequent to the first scheduled hearing, reasonable notice must be provided to all parties of the adjourned date.

4. A parolee may refuse to appear at the Final Hearing.  If the refusal is a voluntary, knowing, and intelligent waiver of the parolee's right to appear, the PRS may request that a hearing be held in absentia.

    NOTE:  The New York City Department of Corrections (NYC DOC) staff may forward, to Community Supervision at the hearing site, an "Undelivered Defendant Form" indicating that the inmate has refused to appear.  This form will be maintained with the VORR/VOP package.

K. <u>Withdrawal of Charges</u>

1. Where VORR charges are based upon pending criminal charges, Community Supervision may submit a report to the Board of Parole recommending a "Cancellation of Delinquency Pending Court Action."  Such cancellation of delinquency is without prejudice to the reinstatement of charges should the parolee be convicted on those criminal charges.

2. A PRS may withdraw VORR charges with prejudice.  VORR charges withdrawn with prejudice cannot be reinstated.  However, if the VORR charges were based on criminal activity and the parolee is convicted, Community Supervision may charge the parolee with the conviction using the sentence date as the DD.

## VIII.  FINAL HEARING DECISIONS

A. <u>Revoke and Restore</u>

1. If a recommendation to restore to supervision has been affirmed, Parole Board Adjudication staff will notify the appropriate PVU.

2. PVU staff will then enter the decision into the VES and distribute copies of the decision.

NOTE:  Controls must be maintained for all Revoke and Restore cases.  These cases should be immediately transferred to a field supervision caseload.  When a parole violator is ordered restored to supervision, the violator must be released as soon as possible.  If the violator has not been released within 30 days from the date of the ALJ Decision/Board Affirmation, Community Supervision must submit a supplementary report to the Board explaining the present status.

3. When the violator becomes available to the VOP/VORR warrant, or within two business days after the ALJ Decision/Board Affirmation, whichever comes first, PVU/Declared Delinquent Other Institution (DDOI) staff will notify the Senior Parole Officer of record of the ALJ/Board decision, of any special conditions imposed, and the date that the violator may be released from local custody.

4. Community Supervision will prepare the "Supplement to Certificate of Release," [Form #CS4160](), for signature by the violator.  Staff will ensure that the Maximum Expiration (ME) date or Post-Release Supervision Maximum Expiration (PRSME) date reflected is noted to be an estimated date.  Staff will sign and date the form, lift the warrant, instruct the parolee to report to the assigned Parole Officer within 24 hours of release, and distribute copies as indicated.

5. If the violator is at a NYS Department of Corrections and Community Supervision (DOCCS) facility, the appropriate PVU will notify the Deputy Superintendent for Programs or Supervising Offender Rehabilitation Coordinator of the Board decision and of any special conditions imposed.  Program Services staff will proceed as follows:

    a. Prepare [Form #CS4160](), "Supplement to Certificate of Release," for signature by the parolee and distribute;

    b. Coordinate release with the Inmate Record Coordinator (IRC);

    c. Instruct the parolee to report to the assigned Parole Officer within 24 hours of release;

    d. Notify the assigned field Senior Parole Officer; and

       e. Forward the case folder/record to the area office/bureau of record.

  B. Revoke and Return

    1. When a Final Hearing decision is received, PVU staff will enter the decision into VES and distribute the copies.

    2. PVU staff will forward the case folder/record to appropriate field staff.

    3. DDOI staff will monitor the case and forward the folder/record to the owning DOCCS facility upon the violator's return.

    4. When the violator is returned to a DOCCS facility, the Supervising Offender Rehabilitation Coordinator will ensure that:

       a. The case folder/record is complete;

       b. The inmate is appropriately processed for re-release; and

       c. The inmate has been provided with a copy of the Final Hearing decision.

## IX. REMOVAL OF WARRANTS

  A. Violators Incarcerated in Local Correctional Facilities

    1. Community Supervision staff must monitor violators so that they are not held past the time assessment imposed or delinquent time owed without review.

    2. Community Supervision staff will submit a "Delinquent Time Assessment Served Worksheet," Form #9021CS, to the Bureau Chief or to the Board, as appropriate, at least 30 days before the expiration of the imposed time assessment.

    3. Staff will not lift the warrant prior to receipt of proper authorization.

## X. NEW CONVICTIONS

  A. Parole Violators with New Terms (PVNTs)

    1. Violators who have been convicted and sentenced to a new indeterminate or determinate sentence are not entitled to either a Preliminary or Final Revocation Hearing. The parole or period of post-release supervision is revoked by operation of law. In most instances, the effective date of delinquency will be the date of the offense that led to the new felony conviction.

    2. Community Supervision may proceed with a Final Hearing in cases where there are technical violation charges that pre-date the offense that lead to the new felony conviction.

  B. Convictions in Federal or Out of State Jurisdictions

    1. If the parolee is convicted of a misdemeanor in another jurisdiction and the original violation of release was not predicated upon the misdemeanor offense, the parolee is entitled to a Preliminary Hearing and a Final Hearing.

    2. If the parolee is convicted of a felony in another jurisdiction, the parolee is entitled to a Final Hearing.

## Parole Violation Warrants

The New York State Board of Parole, or an Officer designated by the Board, is authorized by statute to issue a warrant authorizing the retaking of a parolee and temporarily detaining the parolee pending completion of the revocation process.

A parole violation warrant further authorizes and directs local detention facilities to hold those parolees in temporary detention without the right to bail. Further information regarding the parole warrant can be found in Article 12B, Section 259-i (3) of the Executive Law.

A. Life of a Warrant for the Retaking and Temporary Detention of a Parolee

1. Parole warrants do not expire. They remain in force until cancelled by members of the Board of Parole or completion of the revocation process.

2. The original warrant is to be filed in the folder/record.

B. Certified Copies of Warrants and Their Recall

1. Certified copies of warrants have the same force and effect as the original warrant. A certified copy will be filed as a detainer at the detention facility. The original remains in the parolee's folder/record. A certified copy may be filed with law enforcement agencies that may assist in apprehending the parolee.

2. Certified copies of warrants must be completed and executed in the presence of a commissioned (i.e., licensed) Notary Public. Under no circumstances shall Community Supervision staff be in possession of pre-notarized copies of parole violation warrants. A certified copy of a warrant shall only be considered authentic and a written enforceable instrument if completed in the presence of a licensed Notary Public.

3. Community Supervision staff are responsible for ensuring that certified copies of the parole warrant are recalled when cancelled by action of members of the Board of Parole.

C. Conformed Copy of a Warrant

1. A "Conformed Copy of a Warrant," Form #4053CS, is valid for two business days after lodging. It is to be used only in those instances where time and distance make it impractical or impossible for the Parole Officer to immediately obtain the original or certified copy of a warrant and only where supervisory approval for issuance of a warrant has been obtained.

D.　　Lost or Mutilated Warrants

1. In cases where the original warrant is lost or mutilated, a certified copy of the warrant may be issued. A memorandum to the folder will be prepared by the Senior Parole Officer, advising of the status of the original warrant.

E.　　Parole Violation Warrants and Bail

1. Parole Violation Warrants preclude bail in New York State. The New York State Board of Appeals in <u>People ex rel. Calloway v. Skinner</u>, 33 N.Y. 2d 23, 347 N.Y.S. 2d 178 (1973) held that parolees "are not entitled to bail or to release pending a hearing before the Parole Board." The rationale for this determination is that a parole revocation proceeding before a Parole Board is not a "criminal action or proceeding" under the control of the Court and, therefore, does not come under the right to bail statute as delineated in the Criminal Procedure Law.

# DRAFT LETTER TO BE UTILIZED BY AREA OFFICES WHERE A NEW YORK STATE PAROLEE IS ARRESTED AND IN CUSTODY OUTSIDE OF NEW YORK STATE

Date

Address

Dear:

On _____, this agency was advised that the above-noted parolee is currently incarcerated at _____pursuant to _____.

Attached please find our New York State Parole Warrant #_____. We request that it be filed as a detainer against this parolee. Also attached please find this parolee's executed Waiver of Extradition (as denoted as Condition No. 10 of the Certificate of Release to Parole Supervision), and a photograph and fingerprint card for identification purposes.

Furthermore, kindly ascertain whether the parolee will waive extradition. Should the parolee so waive, please inform the undersigned at the earliest possible date so that we may arrange for their return to New York. Please also inform us immediately should the parolee refuse to waive extradition, so that we may then commence extradition proceedings.

Sincerely,

_____
Bureau Chief

Attachments:
    Parole Warrant
    Certificate of Release to Community Supervision
    Photograph and Fingerprint Card

cc:    Area (Bureau) Office
       Central Office File (Community Supervision)

# CALCULATION OF TIME LIMITS

The calculation of Time Limits under Chapter 904, Laws of 1977 shall be determined in the following manner:

> Weekends and holiday <u>are</u> to be counted in the calculation of any time limit under the statute including the three-day limit between the execution of the warrant for retaking and temporary detention and the service of the written notice to the parolee of the time, place and purpose of the revocation hearing.
>
> However, although Saturday, Sunday, and holidays are counted for purposes of calculating the time, if the last day for doing any act required by the statute falls on a Saturday, Sunday or holiday, the act can be done on the next following business day.

Section 25-a of the General Construction Law reads in pertinent part as follows:

> "25-a Public holiday, Saturday or Sunday in statutes, extension of time where performance of act is done on Saturday, Sunday, or public holiday."
>
> "1. When any period of time, computed from a certain day, within which or after which or before which an act is authorized or required to be done, ends on a Saturday, Sunday, or public holiday, such an act may be done on the next succeeding business day…."

Thus, in a case where a warrant is executed on a Friday the written notice of the time, place, and purpose of the hearing would have to be served on the next Monday since Saturday and Sunday are both counted as part of the three-day limit. If the warrant was lodged on a Thursday, the required day for service of the notice would still be Monday since the three-day period expires on a Sunday and Section 25-a of the General Construction Law provides that the act can therefore be done on the next day. Further, if in the above example, Monday was a holiday, the notice would not have to be served until Tuesday.

NOTE: When computing the time in all cases under the statute, the day from which the time is computed is not counted.

# DIAMOND DECISION

Alleged parole violators have various due process rights guaranteed by both the Constitution and the Executive Law.  Some of these rights include the right to a timely Preliminary and Final Hearing, the right to receive a written notice of charges and of the time, place and date of the Preliminary and Final Hearing.

When field staff, in reviewing the case, determines that the Department has violated one of these rights, the Parole Officer must immediately prepare a Supplementary Violation of Release Report indicating the nature of the due process violation and recommending cancellation of delinquency.  Supervisory staff must expeditiously process that report to the Board for its review and decision.  Should the Board cancel delinquency, the warrant is to be lifted immediately.

A due process claim may also be raised by an alleged violator/counsel at the Preliminary or Final Revocation Hearing.  The Hearing Officer or Administrative Law Judge may entertain that claim only where the hearing proceeds on its merits.  A Hearing Officer or Administrative Law Judge will rule in a due process claim only when there is no contested issue of fact and/or law and where the Parole Officer and/or Parole Revocation Specialist, after consideration of the claim, determines and concedes that the claim to violation of due process rights did occur.  In those cases where the claim is contested on the facts or the law, the Hearing Officer will advise the alleged violator that no recommendation will be made to the Board concerning the claim and that the violator may wish to seek a judicial remedy.  A Hearing Officer or Administrative Law Judge, after completing a hearing in which a due process claim is both raised and conceded may, in their discretion, submit findings and recommendations to the Board only on that claim, withholding the report and recommendation on the underlying allegations of parole violation where it reasonably appears that the disposition of the claim will be dispositive of the case.  The withheld report and recommendations shall be submitted if the Board rejects the claim.