

STATE OF NEW YORK
OFFICE OF THE ATTORNEY GENERAL

LETITIA JAMES
ATTORNEY GENERAL

DIVISION OF STATE COUNSEL
LITIGATION BUREAU

Writer's Direct Dial: (212) 416-6127

May 11, 2020

Via ECF

The Honorable Colleen McMahon
United States District Court for the Southern District of New York
Daniel Patrick Moynihan United States Courthouse
500 Pearl Street
New York, NY 10007

    Re:    *Bergamaschi, et al. v. Andrew M. Cuomo, et al.*, No. 20 Civ. 02817 (CM)

Dear Chief Judge McMahon,

I write on behalf of Defendants in the above-referenced action. Unfortunately, the parties have been unable to reach agreement on some key issues, including the appropriate scope and time frame for completing discovery. Accordingly, pursuant to the Court's April 20, 2020 Order (ECF No. 33) ("Order") denying Plaintiffs' motion for a preliminary injunction, I submit this letter to set forth the Defendants' proposed "plan of action." Order at 31-32.

Amending the Complaint. The Court has already recognized that the Plaintiffs' state law claim is not viable. *Id*. at 30-31. In addition, the Governor is not a proper defendant here because he is not alleged to, and does not, have any role in the enforcement of the state's parole revocation procedures, and therefore does not fall within the limited exception to sovereign immunity under *Ex Parte Young*, 209 U.S. 123, 157 (1908). *See, e.g., Citizens Union of the City of New York v. Attorney General*, 16 Civ. 9592, 2017 WL 2984167, at **4-5 (S.D.N.Y. June 23, 2017) (dismissing Governor because limited exception under *Ex Parte Young* does not apply to Nonprofit Disclosure Provisions of New York Executive Law) (collecting cases). During counsels' meet-and-confer sessions, Plaintiffs agreed to file an amended complaint in order to drop their state law claim but refused to remove the Governor as a party defendant. Accordingly, the Governor will need to file a motion to dismiss in response to the Plaintiffs' amended complaint. The Court also noted that the Plaintiffs may "wish to amend their complaint to add additional claims for relief – although it is not clear to the court that a class action under Section 1983 is the proper vehicle for raising those issues." Order at 31. Although Plaintiffs' counsel has advised us that their clients will not be raising any additional claims in their amended complaint, should they do so Defendants may move to dismiss those claims as well. Defendants propose that they have 30 days to respond to the amended complaint.

Hon. Colleen McMahon
Page 2 of 3

Class Certification.  On April 4, 2020, Plaintiffs filed a motion for class certification pursuant to Rule 23(a) and (b)(2) of the Federal Rules of Civil Procedure (ECF No. 5) ("Class Certification Motion").  There is no need for Plaintiffs to pursue this case as a class action under the doctrine announced in the seminal case of *Galvan v. Levine*, 490 F.2d 1255 (2d Cir. 1973), because any injunctive relief granted by this Court to the Plaintiffs would necessarily benefit all alleged parole violators who are detained.  *See Davis v. Smith*, 607 F.2d 535, 540 (2d Cir. 1978) ("Where retroactive monetary relief is not at issue and the prospective benefits of declaratory and injunctive relief will benefit all members of a proposed class to such an extent that the certification of a class would not further the implementation of the judgment, a district court may decline certification."). Plaintiffs rejected Defendants' request to withdraw their Class Certification Motion and abandon the class action allegations in the complaint.  Defendants propose that they file their opposition to the Class Certification Motion by June 8, 2020, and Plaintiffs file their reply by June 22, 2020.  Plaintiffs have rejected this proposal and insist on a shorter briefing schedule, even though the resolution of their motion will have no practical effect on discovery.

Discovery.  As a threshold matter, Defendants believe it is imperative for the Court to clarify now the narrow scope of discovery that is necessary and appropriate for the parties to pursue.  The Court went to considerable lengths to point out "what this case . . . is not about," including highlighting those issues that are irrelevant to the Plaintiffs' due process challenge but are nevertheless "mentioned, some at length, in Plaintiffs' papers" and "are, therefore, window dressing."  Order at 5-6.  The extraneous issues include the risks associated with incarcerating people at Rikers Island or elsewhere during a pandemic, the wisdom of New York's long-standing mandatory detention regulation, the sufficiency of the Governor's recently-devised *ad hoc* procedures for determining release suitability in response to the pandemic, and whether New York is abiding by its current parole revocation procedures.  *Id*. at 6-8.  Rather, the only facts that are relevant to the resolution of this case, and therefore the proper focus of discovery, are those in play under the balancing test in *Matthews v. Eldridge*, 424 U.S. 319 (1976), "which requires comparing the magnitude and risk of burdens on the individual to the burdens with the costs to the state of implementing" Plaintiffs' additional bond hearing procedure.  Order at 25.

Despite the narrow scope of Plaintiffs' case and the Court's Order, Plaintiffs have refused to agree to limit discovery to the factors in the *Matthews* test.  Defendants have a justified concern that Plaintiffs will seek broad-based discovery that goes well beyond their due process claim and relates instead to their "window dressing" allegations based on the "list of initial questions" they previously insisted Defendants answer, a copy of which is attached as Exhibit A.  The Court should head off at the pass any attempt by Plaintiffs to turn this case into a vehicle for gathering voluminous and irrelevant information about New York's parole revocation procedures by limiting the scope of discovery to the factors under the *Matthews* test.

In addition to this disagreement over the proper scope of discovery, the parties have a fundamental dispute over the appropriate and necessary time frame for discovery.  Plaintiffs want an expedited discovery schedule that would provide less than three months to complete all fact and expert discovery.  Under normal circumstances, Plaintiffs' proposed schedule would be unwarranted and unduly burdensome.  Under the current lockdown restrictions in place due to the pandemic – where DOCCS and Parole Board employees are working remotely without access to paper files located

in their offices, all depositions must be conducted through video or audio teleconferencing systems, and the Parole Board is making extra efforts to keep on schedule with preliminary and final revocation hearings using the WebEx system under the restricted access rules put in place by NYCDOCS – Plaintiffs' proposal is patently unreasonable. Aside from the above-mentioned logistical issues attributable to the pandemic, there is simply no justification for imposing an expedited discovery schedule here. The Court has already noted that while the pandemic was the impetus for this lawsuit, it "has nothing to do with whether the mandatory detention regulation is or is not constitutional. . . . [If mandatory detention] was not unconstitutional [from the beginning], the pandemic does not make it unconstitutional now." *Id*. at 6. To the extent Plaintiffs maintain that increased health risks to inmates posed by COVID mandate expedited resolution of this case, they ignore the reality of implementing the new bond hearing procedure they seek. Even under Plaintiffs' unreasonably ambitious schedule, the parties would file summary judgment motions into September 2020 and the Court's decision would likely be issued no earlier than October 2020. Assuming, *arguendo*, that the Court grants summary judgment to Plaintiffs, and that the Court's decision is not stayed pending appeal, implementing any new bond hearing procedure would not be a quick or simple endeavor. DOCCS would need to promulgate new regulations to govern the new bond hearing procedure to replace the existing mandatory detention rules, with notice and a public comment period as required under the State Administrative Procedure Act. The Parole Board would need to hire and train new administrative law judges or other "neutral decision-makers" to conduct the new hearings and secure the necessary locations (virtual and/or physical) to accommodate the new hearings without displacing resources being used for conducting the required preliminary and final revocation hearings. And necessary funds would have to be appropriated in the state's budget. Given all that must occur, it is virtually inconceivable that the Parole Board could implement any new hearing procedure before the COVID pandemic has abated. Therefore, there is no need for the Court to impose an expedited discovery schedule of less than three months. Defendants propose six months (until October 30, 2020) as an appropriate and reasonable time frame to complete fact discovery given the logistical issues posed by the pandemic and lack of any exigency due to the length of time it will take to implement any new hearing procedure in the unlikely event that Plaintiffs prevail on their claim.

Finally, Defendants disagree that fact discovery should proceed simultaneously with expert discovery, largely because it seems highly unlikely that the parties will need experts to address the factors under the *Matthews* test. The better, more efficient approach here is to allow the parties to assess the need for experts after fact discovery ends and to allow a two-month period for affirmative and rebuttal expert disclosures and depositions in the event either side determines expert testimony is necessary. Following expert depositions, or following the close of fact discovery if neither side designates an expert, the parties can file summary judgment motions pursuant to a reasonable two-month briefing schedule. The Court can then set the case down for trial and establish dates for pre-trial submissions in the event the case is not fully and finally resolved on summary judgment.

          Respectfully submitted,

          */s/ Andrew Amer*
          Andrew Amer
          Special Litigation Counsel